IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

THE STATE OF MISSISSIPPI, ex rel.
JIM HOOD, ATTORNEY GENERAL                                                PLAINTIFF

V.                                                      CIVIL ACTION NO.: 4:17CV74-SA-JMV

MERITOR, INC., ROCKWELL AUTOMATION, INC.,
THE BOEING COMPANY
TEXTRON, INC.                                                             DEFENDANTS

MEMORANDUM OPINION

This matter arises on Plaintiff's Motion to Remand [28]. Defendants responded, and Plaintiff replied. Defendants requested leave to file a sur-reply, as well [46]; however, after review of the record and the relevant precedent, that request is DENIED. The Court finds as follows.

*Facts and Procedural History*

Attorney General Jim Hood brought this action on behalf of the State of Mississippi and its citizens in the Chancery Court of Grenada County, Mississippi. Plaintiff seeks to enjoin Defendants from discharging contaminants into the groundwater and surface waters, releasing toxic sludge and chemicals onto the ground and emitting thousands of tons of hazardous chemicals into the air through its operation of an automobile wheel cover (hubcap) plant. The Chancery Court Complaint made state law claims of gross negligence, public nuisance, and trespass for those actions alleged by the Plaintiff.

Defendants removed the action, arguing that this Court has original subject matter jurisdiction pursuant to 28 U.S.C. 1331 under the substantial federal question doctrine, arguing that Plaintiff's claims are completely preempted. *See Grable & Sons Metal Prods. v. Darue Eng. & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005); *Bd. of Comm'rs of Se. Louisiana Flood Prot. Auth.-E. v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 722 (5th Cir.

2017), *cert. denied sub nom. Bd. of Comm'rs of Se. Louisiana Flood Prot. Auth. - E. v. Tennessee Gas Pipeline Co.*, No. 17-99, 2017 WL 4869188 (Oct. 30, 2017). Defendants argue that Environmental Protection Agency ("EPA") regulations relating to the Resource Conservation and Recovery Act's (RCRA) and its Hazardous and Solid Waste Amendments of 1984 (HSWA) effectively subsume Plaintiff's claims.[1] Further, Defendants move the Court to find that the federal regulatory scheme enforced by the EPA via its permit procedure, pursuant to the RCRA, mandates federal jurisdiction.

*RCRA and Defendants' EPA Permit*

In 1976, Congress enacted the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992, "to promote the protection of health and the environment . . . ." 42 U.S.C. § 6902(a). The "RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483, 116 S. Ct. 1251, 134 L. Ed. 2d 121 (1996) (citation omitted); 42 U.S.C. § 6924. Subsequently, the EPA promulgated compliance and corrective action regulations for hazardous waste monitoring and disposal pursuant to HSWA and enforceable by the EPA Administrator. *See id*; 40 C.F.R. §§ 264.92-264.100. Primarily, the EPA Administrator monitors disposal and corrective action through use of a permit system much like the one in the case at bar. 42 U.S.C. § 6925.

On July 31, 1998, the EPA issued a 10-year RCRA/HSWA permit to Defendant Textron, Inc., for the Grenada Plant Site. In 1999, Grenada Manufacturing, LLC, purchased the Plant Site.

---

[1] Defendants purport that the Clean Water Act, the Solid Waste Disposal Act, and "other applicable law" subsume Plaintiff's claims, as well. However, Defendants offer no further legal support regarding these alternative theories. The removing party bears the burden of showing that subject matter jurisdiction exists and that removal was proper. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Any doubts are construed against removal because the removal statute is strictly construed in favor of remand. *Id.* Therefore, to the extent that Defendants base the removal on these alternative theories, the assertion is not well taken.

As a part of this transaction, Grenada Manufacturing, LLC, acquired the RCRA/HSWA permit and assumed responsibility for all duties and obligations owed to the EPA under the permit.

The EPA approved certain remedial measures in 2000 to address plant groundwater contamination at and off the Grenada Plant Site, including the construction of a permeable reactive barrier (PRB) to prevent migration of contaminants from the Grenada Plant Site to the Yalobusha River. The EPA later approved a Conceptual Site Model Report (CSM) submitted by Grenada Manufacturing, LLC, identifying corrective measures for the plant site, including the construction of the PRB, to remediate and prevent off-site migration of groundwater into waters of the United States.

However, in 2004, Grenada Manufacturing, LLC, filed for bankruptcy relief in the Northern District of Mississippi. The Bankruptcy Court approved the aspects of a sale motion, wherein Grenada Manufacturing, LLC, was to sell substantially all of its assets to Grenada Manufacturing Acquisition Corporation, a subsidiary of Ice Industries, Inc. Under the Proposal, Ice Industries, Inc., would ensure that the environmental remediation continued by coordinating environmental permitting and corrective action activities under oversight of the EPA, but Grenada Manufacturing, LLC, would retain the RCRA/HSWA permit. In late 2005, the EPA again modified the permit, requiring Grenada Manufacturing, LLC, to investigate and remediate contamination migrating beyond the Grenada Plant Site boundary, including Riverdale Creek.

On July 29, 2010, the EPA issued a second 10-year RCRA/HSWA permit to Grenada Manufacturing, LLC. Non-compliance with the provisions of the permit is grounds for an EPA enforcement action under RCRA and HSWA. A subsidiary of Ice Industries Inc. continues to lease and operate portions of the Grenada Plant Site, and Grenada Manufacturing, LLC, continues to hold the EPA RCRA/HSWA permit.

*Removal Standard*

Federal courts are courts of limited jurisdiction. *Epps v. Bexar-Medina-Atascosa Counties Water Improvement Dist. No. 1*, 665 F.2d 594, 595 (5th Cir. 1982). The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

After removal of a case, the plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Moreover, once a motion to remand has been filed, the removing party bears the burden to establish that federal jurisdiction exists. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Furthermore, the Fifth Circuit has held that "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citing *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000)).

In a "'special and small category of cases," federal jurisdiction may exist even though state law creates the cause of action. *Gunn v. Minton*, 568 U.S. 251, 258, 133 S. Ct. 1059, 185 L. Ed. 2d 72 (2013) *(*quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 126 S. Ct. 2121, 165 L. Ed. 2d 131 (2006)). The complete preemption doctrine applies when a federal statute "so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 773 (5th Cir. 2003) (quoting *Carpenter v. Wichita Falls Ind. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). Relatedly, state laws are substantively preempted when they conflict with federal law and are for that reason

invalidated under the Supremacy Clause of Article VI. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 894, 120 S. Ct. 1913, 146 L. Ed. 2d 914 (2000). However, removal is not proper if based on a defense or an anticipated defense that is federal in nature, "including the defense of preemption . . . ." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("The fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [a federal statute] does not establish that they are removable to federal court").

"[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. 308, 314, 125 S. Ct. 2363. Such circumstances require courts to engage in complex statutory interpretation, and to discern Congress's intent to preempt conflicting state law through analysis of the "structure and purpose" of the relevant federal statute and its legislative history. *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992).

*Analysis and Discussion*

State action may be preempted by federal law in three ways: "by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S. Ct. 2404, 150 L. Ed. 2d 532 (2001) (citations omitted); *accord English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990) (listing three categories of preemption); *AT & T Corp. v. Public Util. Comm'n of Tex.*, 373 F.3d 641, 645 (5th Cir. 2004) (same). However, "the categories of preemption are not 'rigidly distinct.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372, 120 S. Ct. 2288, 147 L. Ed. 2d 352 (2000) (quoting *English*, 496 U.S. at 79 n.5, 110 S. Ct. 2270). It

is undisputed that Plaintiff has failed to assert a federal cause of action explicitly on the face of its well-pleaded complaint. However, Defendants assert that federal jurisdiction exists because the complaint, which asserts state-law claims, raises substantial and disputed issues of federal law (implied field preemption), or alternatively, that a state court resolution would conflict with federal law (implied conflict preemption). As there is no statutory directive that requires the RCRA to displace all state laws regulating contaminants or barring state tort claims, the Court examines implied field preemption and implied conflict preemption in order to determine whether it should abstain or assume jurisdiction over this matter.

## I. Implied Field Preemption

A federal question exists only where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed.2d 420 (1983)). Federal question jurisdiction exists where: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Commissioners*, 850 F.3d 721–22 (citing *Singh*, 538 F.3d at 338).

a. *Whether Plaintiff's Claims Raise Actually Disputed Substantial Questions of Federal Law*

First, Defendants argue that resolving the Plaintiff's claims necessitates an examination of the RCRA's regulatory scheme. Defendants aver that resolution of the State's claims "will turn on this Court's evaluation of the EPA's interpretation of RCRA and its implementing regulations, the efficacy of the enforcement decisions of the EPA Administrator, and the putative effectiveness of

the remedial actions taken by Meritor and Textron both on-site and off-site as directed by the EPA." Thus, Defendants argue, resolving this matter would require a Court to construe and determine terms and duties defined by and imposed by the RCRA, such as "facility," "on-site," and "off-site" in order to determine whether Defendants were liable under Plaintiff's state law claims. In other words, Defendants argue that the depth and breadth of the RCRA's congressional scheme occupies the legislative field to the extent that this Court must take jurisdiction.

However, resolution of Plaintiff's claims does not require the interpretation of a substantial issue of federal law. *Singh*, 538 F.3d at 338 (quoting *Franchise Tax Bd*, 463 U.S. at 27-28, 103 S. Ct. 2841). The meaning of certain RCRA terms and duties governing Defendant's conduct, such as "compliance schedule," or "corrective action program," may serve as evidence to assist a trier of fact, but contemplating the impact of such terms is not paramount in determining liability here. Furthermore, Plaintiff's claim does not draw on federal law as the exclusive basis for holding Defendants liable for their actions. *Compare MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002) ("[C]laims for negligence and strict liability arose out of alleged contamination of plaintiffs' land with toxic chemicals, which undisputedly gave rise to a cause of action under state law"), *with Bd. of Commissioners* 850 F.3d at 722 ("Here, however, Defendants correctly point out that the Board's complaint draws on federal law as the exclusive basis for holding Defendants liable for some of their actions).

Regardless, "[t]he fact that a substantial federal question is necessary to the resolution of a state-law claim is not sufficient to permit federal jurisdiction." *Singh*, 538 F.3d at 338. "For federal courts to have jurisdiction, the state law claim must *turn on* an 'actually disputed and substantial' issue of federal law." *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) (quoting *Grable,* 545 U.S. at 314, 125 S. Ct. 2363) (emphasis added). Plaintiff does not directly dispute or

7

affirm Defendants' compliance with the RCRA, but rather claims Defendants negligently polluted the environment, trespassed and created a nuisance. Furthermore, Plaintiff's claim here is fact-bound and situation specific, and is not determined by a discrete issue of federal law, as contemplated by the Supreme Court in its development of this doctrine. *Empire Healthchoice Assur., Inc.*, 547 U.S. 681-700, 126 S. Ct. 2121.

    b. *Federal and State Balance*

Federal jurisdiction must, further, be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313–14, 125 S. Ct. 2363.

Even though the RCRA is a "national policy of the United States that, wherever feasible, the generation of hazardous waste is to be reduced or eliminated as expeditiously as possible," a separate provision also states that it is the will of Congress that the RCRA guide a "cooperative effort among the Federal, State, and local governments and private enterprises." 42 U.S.C. § 6902(a)(11)-(b). In addition, although the Act requires federal approval, provisions in the RCRA allow states to run their own waste management programs. *See* 42 U.S.C. § 6943. Thus, the legislation creates a federal-state partnership, rather than subsume the state's rights in their entirety.

Next, considering the entire legislative scheme of the RCRA together with the language of the Act's citizen-suit provision, the Court concludes that the RCRA does not preempt by implication the field staked out by the Act's regulation. Section 6972 represents RCRA's citizen-suit savings clause, providing that:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any standard or requirement relating to the management of solid waste or hazardous waste, or to seek any other relief (including relief against the Administrator or a State agency).

42 U.S.C.A. § 6972. The savings clause undercuts the Defendants' argument that, though artfully pled, the Plaintiff's complaint raises actually disputed substantial federal questions. The Act contemplates recovery beyond EPA regulation, as evidenced by Section 6972.

Indeed, upon examination of the legislative history of the Act, the Court finds that nothing in the RCRA gives the EPA exclusive authority to act. Section 7003, the imminent hazard provision of the Act, authorizes the EPA Administrator to "bring suit on behalf of the United States in the appropriate district court against any person . . . ." 42 U.S.C. § 6973(a). However, the legislative history provides that "use of the imminent hazard provisions of this Act does not preclude further enforcement actions against the violators." *Subcomm. on Oversight and Investigations of the Comm. on Interstate and Foreign Commerce, Report on Hazardous Waste Disposal*, H.R. Comm. Print No. 96–IFC 32, 96th Cong., 1st Sess. 32 (1979). The Senate Committee on Environment and Public Works report made clear that "Section 7003 is an alternative and supplement to other remedies." *Report of the Committee on Environment and Public Works,* S.Rep. No. 98–284, 98th Cong., 1st Sess. 56 (1983).

Conversely, Defendants direct the Court to the RCRA's state authorization process. *See* 40 C.F.R. §§ 271.6-271.7(a). Pursuant to Section 6991c(d)(2), a state program can operate "in lieu of" the RCRA if the EPA Administrator formally approves the state program for that purpose. 42 U.S.C. § 6991c(d)(2); see also 42 C.F.R. 271.7 (setting forth regulatory requirements for EPA to approve a state RCRA program). Thus, if a state enacts its own regulatory program, and the EPA Administrator then approves it, the state program replaces the federal regulations, negating any potential conflict between the state and federal program. *Legislative History of House Comm. on Resource Conservation and Recovery Act of 1976*, H.R. Rep. No. 94–1491, Pt. I, 94th Cong., 2d Sess., *reprinted in,* 1976 U.S. Code Cong. & Admin. News, 6238, 6244 ("The states are given, if

they chose, the authority to establish and implement a state program in lieu of a federal program, if such a program is equivalent to the federal program"). According to the record, the State of Mississippi, acting by and through the Mississippi Department of Environmental Quality ("MDEQ"), has never sought authorization from the EPA to administer 42 U.S.C. § 6924(u) (pertaining to continuing releases at permitted facilities) or 42 U.S.C. § 6924(v) (regarding corrective action beyond the facility boundary) and the corresponding Corrective Action Process for the Plant, indicating that there is no regulatory program administered by the State of Mississippi.

Defendants argue that federal regulation specifically requires the state to certify to the EPA that the state's laws and regulations are adequate to carry out the RCRA programs *in lieu* of the EPA regulation in order to satisfy the statute's requirements. Thus, Defendants theorize that because the state did not receive any approval for its own regulatory scheme, the relief sought by the Plaintiff would require federal approval before it may be implemented, which, Defendants argue, would "create an unbalance between State and Federal laws." Though "the clear negative implication of the approval requirement in Section 6991c is that if a state does not get its [ ] program approved, the state cannot operate its program in place of the federal program," the Plaintiffs here do not attempt to create any regulatory program *in lieu* of the EPA. *Boyes v. Shell Oil Prod. Co.*, 199 F.3d 1260, 1267–68 (11th Cir. 2000). Accordingly, Section 6991c is not applicable and does not preclude an action against defendants for state common law claims.

Clearly, the authority to dole out consequences does not lie with the EPA exclusively. Furthermore, Defendants' theory that the relief sought by the Plaintiff would require federal approval before it may be implemented is destabilized by the citizen suit provision, by the imminent hazard provision, and by the fact that Plaintiff does not seek to create a state program to

be implemented in lieu of the EPA's program. Therefore, the Court finds that Defendants have not met their burden of showing that this Court should take jurisdiction over Plaintiff's claims based on implied field preemption. This conclusion does not end the removal analysis, however. The court must examine whether the permit preempts the state law claims on the ground that any state law remedy sought by the Plaintiff would conflict with the EPA's federal mandate, and whether that would warrant removal.

**II. Conflict Preemption**

The Supreme Court has found actual conflicts resulting in preemption where "under the circumstances of [a] particular case [the state] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399 L. Ed. 581 (1941); *Crosby*, 530 U.S. at 373; *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed. 2d 385 (1995); *Fid. Fed. Sav. & Loan v. de la Cuesta*, 458 U.S. 141, 153 102 S. Ct. 3014, 73 L. Ed. 2d 664 (1982). Such implied conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility" or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983) (internal quotation marks omitted) (quoting *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S. Ct. 1210, 10 L. Ed. 2d 248 (1963); *Hines*, 312 U.S. at 67, 61 S. Ct. 399); *see also Wells Fargo Bank of Tex. NA v. James*, 321 F.3d 488, 491 n.3 (5th Cir. 2003) (explaining that implied conflict preemption occurs "where the state law mandates or places irresistible pressure on the subject of the regulation to violate federal law, where compliance with both regulations is physically impossible, where the state regulation frustrates or hectors the overall purpose of the federal

scheme, or where the federal scheme expressly authorizes an activity which the state scheme disallows.") (citations omitted).

Defendants argue that Plaintiff makes claims for legal and equitable relief for actions allegedly *already taken* by Defendants under EPA oversight, which impact on and off-site groundwater migration, pursuant to EPA's prior and current RCRA/HSWA permits. Thus, Defendants argue that a decision in Plaintiff's favor regarding its state law claims would necessitate a conflict with federal regulation already imposed by the EPA. Defendants argue that the conflict demands complete preemption.

However, remedies granted to the Plaintiff for its common-law tort claims would not necessarily require interference with the terms of the permit. The Complaint seeks relief from decades of omissions from before the EPA began its regulation or issued permits. The Complaint also alleges that areas not specifically covered by the permit were contaminated.

In any event, "[t]he fact that a defendant might ultimately prove that a plaintiff's claims are preempted under [a federal statute] does not establish that they are removable to federal court." *Caterpillar Inc.*, 482 U.S. at 393, 107 S. Ct. 2425. "Complete preemption, which creates federal removal jurisdiction, differs from more common ordinary preemption, which does not." *Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000); *see also Lister v. Stark*, 890 F.2d 941, 943 n. 1 (7th Cir. 1989). In the case at bar, the latter is in play. Ordinary preemption is a federal defense that may arise by a direct conflict between the operation of federal and state law, but does not appear on the face of the complaint. *Gutierrez v. Flores*, 543 F.3d 248, 252 (5th Cir. 2008). Ultimately, asserting compliance with federal regulations serves as a defense to Plaintiff's state-law claims. Therefore, Defendants arguments result in an application of ordinary preemption principals that do not merit removal jurisdiction.

Next, Defendants argue that because the Plaintiff seeks injunctive relief, their claims are preempted similarly. To the extent that injunctive relief might be granted, it would still not require removal jurisdiction, even if preempted, for the same reasons discussed above. The Complaint does not allege that any failures to contain waste constitute violations of the RCRA permit. Indeed, the Plaintiff does not challenge the permit at all. Conversely, the Complaint disclaims any intent to interfere with the ongoing EPA-approved remediation. The fact that Defendants allege that Plaintiff's injunctive relief could possibly exceed the State's authority under federal law is insufficient to confer federal removal jurisdiction here.

Regarding the final issue in dispute, parties disagree as to whether the permit provides a basis for EPA directives off-site. Plaintiff directs the Court to a letter from Defendants responding to the EPA's request to undertake remediation of off-site contamination. The Court finds that the issues regarding the letter are merits based, and do not affect this Court's jurisdictional deliberation. In considering a motion to remand, courts are confined to the allegations of plaintiffs' petition, and may receive no evidence which would expand or modify that pleading. *Great Northern Railway Company v. Alexander*, 246 U.S. 276, 38 S. Ct. 237, 62 L. Ed. 713 (1918) (defendant cannot convert an action into a removable one by presenting evidence.))

### III. Fees and Costs

Plaintiff requests that the Court award costs and fees incurred as a result of Defendants' removal. *See* 28 U.S.C. § 1447(c), ("[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal"). However, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital*

13

*Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). The Court finds that Defendants asserted a reasonable basis for seeking removal, and thus the award of costs and fees is DENIED.

*Conclusion*

This Court is governed by the general rule that federal jurisdiction will not be found when the complaint states a *prima facie* claim under state law. *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990); see also *Caterpillar, Inc.*, 482 U.S. at 386, 107 S. Ct. 2425. Therefore, the Plaintiff's Motion to Remand [28] is GRANTED. The Clerk is directed to remand this case to the Chancery Court of Grenada County, Mississippi.

SO ORDERED this the 13th day of March 2018

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE